# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| UNITED STATES OF AMERICA | \* |
| | \* |
| v. | \* |
| | \* |
| CHARLES WINSTON, JR. | \* |

**CRIMINAL NO. 03-30008-MAP**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR JOINDER PURSUANT TO FED. R. CRIM. P. 13 AND 8(a)

The Government has moved to join two separate indictments pending against the defendant. The earlier indictment is a multiple defendant drug conspiracy that has been pending before this court for quite some time. (Criminal No. 03-30008-MAP). The more recent indictment (Criminal No. 04-30026- MAP), is a two count, single defendant indictment alleging possession of cocaine with intent to distribute and an 18 U.S.C. §924 (c) violation. The earlier indictment encompasses conspiratorial activity going back to early 2002. The only substantive criminal acts alleged to have been committed by Mr. Winston in that indictment, took place in December of 2002. The conspiracy is alleged to have encompassed multiple-kilogram amounts of narcotic distribution and the defendant anticipates that one or more alleged co-conspirators will testify for the Government at trial.

The more recent indictment charges the defendant with criminal acts committed on October 15, 2003, the date of his arrest on the warrant stemming from the earlier indictment. On that date, the defendant was allegedly found with approximately eighty-five grams of cocaine in a kitchen cabinet in his home. Approximately $57,000.00 cash

was recovered in a safe located in the basement. A .45 caliber firearm was recovered from a bedroom on the second floor.

Rule 13 of the Federal Rules of Criminal Procedure provides:

> The Court may order that separate cases be tried together as though brought in a single indictment... if all offenses and all defendants could have been joined in a single indictment...

While Rule 13 undeniably permits joinder under such circumstances, it is abundantly clear that a judge has a great deal of leeway in determining whether joinder is appropriate. *United States v. Doherty*, 867 F.2d 47, 70 (1st Cir. 1989) (holding that there was no abuse of discretion in refusing to grant "a joinder that would have increased the complexity of [an] already complex trial"); *United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978).

The test for consolidation under Rule 13 is whether the charges could have been initially joined in a single indictment pursuant to Fed. R. Crim. P. 8(a). *Id.; United States v. Clayton*, 450 F.2d 16, 18 (1st Cir. 1971). The text of Rule 8(a) allows charges to be joined for trial if they are "of the same or similar character," "based on the same act or transaction," or "connected with or constitute parts of a common scheme or plan." Though they are to be liberally construed, joinder is forbidden except where one of the three prongs is met, and "those conditions, although phrased in general terms, are not infinitely elastic." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996); *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966) ("Rule 8 is an attempt to set the limits of tolerance, and any joinder which does not fall within it is *per se* impermissible.")

In determining whether separate indictments meet these criteria, First Circuit courts are to look to "whether the charges are laid under the same statute, whether they

involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995). These factors are important guarantors "that the rule of joinder does not become a license to join any and all charges made against a single defendant, no matter what their interconnection." *United States v. Buchanan*, 930 F. Supp. 657, 662 (D. Mass. 1996)

When analyzed in light of the factors articulated above, it is clear that there is precious little to support the Government's claim that the offenses in each indictment are connected together or constitute a part of a common scheme or plan and may therefore properly be joined. Though the conspiracy involved the distribution of narcotics, there is no evidence linking the drugs found in October 2003 to the earlier charged conspiracy. In all of the government's voluminous surveillance, there is no wiretap evidence that indicates that the defendant's home was a stash for drugs in the original conspiracy, and, to the defendant's knowledge, the government's lead witness for the conspiracy case has not alleged that drugs were ever stored at the defendant's home as a part of the conspiracy.

Though there are no victims, *per se*, involved in this case, the Government has not produced any evidence that the narcotics found in the October 2003 search were going to be distributed to the same network of dealers and users represented by the conspiracy. *See United States v. Yefsky*, 994 F.2d 885, 895 (1st Cir. 1993) (holding that separate schemes sufficiently connected to justify joinder if there is a large overlap of participants and facts). Nor is there evidence that those narcotics would be distributed utilizing the same *modus operandi* as that used by members of the conspiracies, if indeed any "M.O." can be gleaned from the scant evidence of this defendant's conduct that will be offered by

the Government. Further, the acts on which the charges contained in the separate indictments are based took place in completely different time frames. The precise date that any conspiracy ends might always be subject to debate, but here it is clear that the conspiracy ended no later than the indictment and arrest of the last co-conspirators.

Even more tenuous is the argument that the weapon found during the October 2003 search is connected in any way to the original conspiracy. The Government faces a significant challenge in merely showing that the defendant used or carried a firearm in relation to the accompanying drug trafficking charge alleged in the later indictment, given the fact that the gun in question was not in the defendant's possession and was found on an entirely different floor than the narcotics found on the same day. It is simply specious to claim, as the Government does, that the weapon found has any nexus at all with the original conspiracy, as there is no evidence that the defendant ever used this or any weapon in relation to it. Thus, the only link between the weapon found on October 15, 2003 and the original conspiracy is if the narcotics found that same day relate back to the conspiracy, and, as discussed above, that has not been shown.

The dissimilarities described above also strip the Government of any contention that the charges should be joined simply because they are "similar acts." The weakest rationale for joinder is reflected in the "same or similar character" prong. *Randazzo,* 80 F.3d at 627; *Buchanan,* 930 F. Supp. at 665. The *Randazzo* court noted that while the reason for allowing joinder where charges grow out of the same transaction or common scheme is fairly self-evident, the reason for joining similar acts is "less clear." *Randazzo,* F.3d at 627. That court hypothesized that where acts are very similar, they might be more likely to be deemed admissible in separate trials on a Fed. R. Evid. 404(b) theory

resulting in a waste of judicial resources if they are tried separately. *See United States v. Gilbert*, 92 F. Supp.2d 1, 4 (D. Mass. 2000). Absent some sort of special relevance of this sort, courts have been reluctant to join cases where the only argument for doing so is that the charges reflect similar acts. *See, e.g., Randazzo*, 80 F.3d at 628; *Yefsky*, 994 F.2d at 895; *Halper*, 590 F.2d at 430; *Buchanan*, 930 F.Supp. at 665.

The risk, of course, in joining acts merely because they are similar is that the defendant will be unfairly prejudiced. The possibility for unfair prejudice is multiple. First, the defendant may have to present separate defenses for each charge that are at odds with one another. *United States v. Scivola*, 766 F.2d 37, 41-41 (1st Cir. 1985). Second, the jury may infer that evidence proving the defendant's guilt as to one charge also proves that the defendant is guilty of the second charge, even where such evidence would not have been admissible in a trial for the second charge. *Id.* Finally, the defendant may be left in the unenviable position of being forced to testify and incriminate himself as to one charge in order to exculpate himself as to the other. *Id.*

It is the second type of prejudice that the defendant here most fears. The defendant contends that his defense of the charges stemming from the October 2003 search would be severely prejudiced by the joinder of this indictment with the conspiracy indictment. If this case were joined with the conspiracy, the jury would hear very little additional about the defendant's substantive acts (only one, some ten months earlier), but would hear a tremendous amount of information about drug activity for which the defendant is allegedly liable as a conspirator. This evidence would invariably have the effect of spilling over onto the new charges, even though that indictment does not accuse the defendant of carrying or using a firearm with respect to the crimes alleged in the

earlier indictment and the Government is unable to link the narcotics forming the basis of

the second indictment to the original conspiracy.

As Judge Learned Hand noted many years ago:

> [T]here is always a danger when several crimes are tried
> together, that the jury may use the evidence cumulatively;
> that is, that, although so much as would be admissible upon
> any one of the charges might not have persuaded them of
> the accused's guilt, the sum of it will convince them as to
> all.

*Halper*, 590 F.2d at 430-431 (quoting from *United States v. Lotsch*, 102 F.2d 35, 36 (2nd

Cir. 1939). As discussed above, there is little beyond the subject matter of the charges to

link the first and second indictments, making it unlikely that the Government would be

able to articulate some sort of special relevance that would render what amounts to

character propensity evidence of the type barred by Federal Rule of Evidence 404(b)

admissible in a separate trials for each of the charges.

The court should not permit a weak 924(c) case and a distribution charge wholly

unrelated to the earlier conspiracy to be joined with what may be a much stronger case on

conspiracy (due to the presence of cooperating witnesses). *See Clayton*, 450 F.2d at 19

(1st Cir. 1971).

The defendant requests a hearing on this motion.

THE DEFENDANT

By _____

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true

copy of the above document was served upon

the attorney of record for each party by mail/by hand.

Date: 9-27-04 _____

DAVID P. HOOSE, BBO#239400
KATZ, SASSON, HOOSE & TURNBULL
1145 Main Street, Suite 304
Springfield, MA 01103
(413) 732-1939