UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSET

UNITED STATES OF AMERICA    )
                            )
         v.                 )    No. 04-CR-30026-MAP
                            )
CHARLES WINSTON, JR.        )

<u>MEMORANDUM REGARDING</u>
<u>GOVERNMENT'S MOTION FOR EXCLUDABLE DELAY</u>
<u>AND DEFENDANT'S MOTION TO DISMISS</u>
(Dkt. Nos. 37 & 38)

June 25, 2007

PONSOR, D.J.

In this procedurally complex case, the government has moved for an order excluding from the time calculations required under the Speedy Trial Act, 18 U.S.C. § 3161, the period between June 28, 2006 and July 16, 2007. Defendant has opposed this motion and has moved to dismiss the indictment based upon a violation of the statute.

On June 22, 2007, the court, in a condensed order, denied the government's motion to exclude and allowed the defendant's motion to dismiss without prejudice. This memorandum will set forth the rationale for the court's ruling in more detail.

As noted, the procedural background of this case is somewhat elaborate. The outline is as follows.

On October 14, 2003, Defendant was indicted along with twenty-six others on drug conspiracy charges separate from the charges contained in the current indictment. The conspiracy indictment carried Docket No. 03-CR-30008 (the "2003 case"). On October 15, 2003, agents went to Defendant's home to place him under arrest on these separate charges. During the course of the arrest, agents discovered a quantity of drugs and a firearm. This discovery led to the current indictment of this defendant individually, for distribution and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), Docket No. 04-CR-30026 (the "2004 case"). Defendant eventually pled guilty in the 2003 case, and discovery proceeded in connection with this second, 2004 case.

Defendant's counsel filed a motion to suppress in the 2004 case, seeking to bar admission of the evidence seized during the October 15, 2003 search. On January 28, 2005, this court issued its Memorandum and Order allowing the motion. The effect of the ruling was damaging, and perhaps fatal, to the government's ability to prosecute the 2004 case. It is

undisputed that no time had run from the seventy-day Speedy Trial Clock as of the date of the court's issuance of its ruling on the Motion to Suppress.

On February 22, 2005, twenty-four days following issuance of the ruling, the government filed its notice of appeal of the court's suppression order. Thus, at the time of appeal, twenty-four days had run from the Speedy Trial clock.

On April 26, 2006, the Court of Appeals issued its decision, reversing (with a dissent) the court's allowance of the Motion to Suppress, United States v. Winston, 444 F.3d 115 (1st Cir. 2006); two months later on June 28, 2006, the Court of Appeals issued its Mandate. Defendant thereafter filed a timely Petition for Certiorari to the Supreme Court.

Following the return of the Mandate from the First Circuit, this court took action to keep track of the case while the Petition for Certiorari was pending. Thus, counsel appeared for status conferences on September 22, 2006, November 3, 2006, and January 5, 2007. At all these conferences, counsel reported no action by the Supreme Court on Defendant's Petition for Certiorari. At the last conference, the court instructed defense counsel to contact

3

the clerk by February 28, 2007 as to the status of the case and when further proceedings could go forward.[1]

On January 22, 2007, the Supreme Court denied Defendant's Petition for Certiorari. As of that date, only twenty-four days had run off the Speedy Trial clock. The action of the Supreme Court, however, precipitated the problem now confronting the court.

It appears that the district court is not directly notified of actions by the Supreme Court relating to cases before it, though the court of appeals is. <u>See</u> Sup. Ct. R. 16.3 ("Whenever the Court denies a petition for a writ of certiorari, the Clerk will prepare, sign, and enter an order to that effect and will notify forthwith counsel of record and the court whose judgment was sought to be reviewed."). Thus, this court was not directly notified of the Supreme Court's

---

[1] At argument on Defendant's Motion to Dismiss, the Assistant U.S. Attorney indicated that his notes also included a reference to an oral order by the court to the effect that defense counsel was required to report <u>earlier</u> than February 28, 2007, if the Supreme Court took action on the Petition for Certiorari before that date. While this representation appears quite plausible, neither the docket nor the court's notes include this additional detail. In any event, this detail, if true, would not affect the court's ruling on Defendant's Motion to Dismiss.

action in denying Defendant's petition.

Notification of the Supreme Court's denial of Defendant's petition was, of course, publicly available, and a judge, or a clerk at the judge's instruction, might have perused United States Law Week, or some other periodical, to monitor whether the Supreme Court had acted. This did not happen.

Similarly, an Assistant U.S. Attorney ("AUSA") handling a case at the trial level is apparently not directly notified by the Solicitor General when a Petition for Certiorari involving a case being prosecuted by that AUSA is denied. Thus, although the "government" generally was notified of the action by the Supreme Court directly after January 22, 2007, the AUSA prosecuting the case remained in the dark. Like the court, the AUSA might have been monitoring public documents to stay informed, but, again, this did not happen.

The only player at the trial level who was immediately notified of the Supreme Court's action was defense counsel. He brought the denial of the petition to the attention of the court and the AUSA on February 21, 2007, when he filed a Motion for Status Conference. The delay from January 12 to February 21 meant that a further twenty-nine days ran off the

Speedy Trial clock.  Thus, as of February 21, 2007, fifty-three of the seventy days allotted under the Speedy Trial act were exhausted.

The court ruled on the motion on February 23, 2007.  As a result of the pendency of the motion, the period from February 21 to February 23, 2007, was excluded from the Speedy Trial calculation.  See 18 U.S.C. § 3161(h)(1)(F) (permitting "the exclusion of delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").  The court, however, set the date for the status conference for March 28, 2007, unknowingly but clearly putting the case outside the seventy-day Speedy Trial period.  Neither defense counsel nor the AUSA objected to the conference date.

The Speedy Trial Act problem was exacerbated when the court continued the conference from March 28 to April 16, 2007, and then again to April 20, 2007.  The first continuance, according to the courtroom deputy, occurred when the marshals were unable to bring Defendant to the courthouse as requested by defense counsel.  It was originally thought that Defendant, who was by this time incarcerated following

his plea on the 2003 indictment, was at the Federal Correctional Facility at Ft. Devens in Massachusetts, relatively close to the courthouse, when in fact he was at the Federal Correctional Facility at Ft. Dix in New Jersey. This error in locating Defendant necessitated an additional delay while he was brought to court. Again, neither the AUSA nor defense counsel objected to the extended conference date or protested the implicit violation of the Speedy Trial Act.

The government argues that the postponement from March 28 to April 20, 2007 was granted to accommodate Defendant in order to bring him to court and clarify arrangements for his representation. Up to the resumption of proceedings in the 2004 indictment, Defendant's counsel had been representing Defendant via a private retainer. When it appeared that the 2004 case would be going forward, counsel needed to speak to Defendant to determine the terms of ongoing representation. Consultation revealed that Defendant had become qualified for appointed counsel, and defense counsel accepted an appointment under the Criminal Justice Act. See 18 U.S.C. § 3006A (a)-(c).

Counsel appeared for conference on April 20, 2007, and

the court set a trial date, with the agreement of both attorneys, of July 16, 2007. Both counsel at that time agreed, and still agree, that the period from April 20 to July 16 was excludable under the Speedy Trial Act in the interests of justice, based upon counsels' trial schedules and the need to maintain continuity of counsel.

Defense counsel, however, argues vigorously that the time period from the date of denial of the Petition for Certiorari on January 22, 2007 to the status conference on April 20, 2007 (minus the three days when Defendant's Motion for Status Conference was pending), when added to the twenty-four days already expended when the government filed its original notice of appeal, puts this case well beyond the seventy non-excludable days contemplated by the Speedy Trial clock.

The court must agree. Beyond three days, the Speedy Trial Act offers no ground for any exclusion following the denial of the Petition for Certiorari up to April 20, 2007. The fact that both the government and court overlooked the Supreme Court's ruling, when Defendant knew about it, and the fact that defense counsel failed to protest the delay in convening the status conference, does not excuse the lapse.

While defense counsel cannot deliberately manipulate scheduling to manufacture a violation of the Speedy Trial Act, or lull the government with promises to waive the statute's provisions, compliance with the statute is, at bottom, the responsibility of the court and the government. See United States v. Pringle, 751 F.2d 419, 429 (1st Cir. 1984)(noting that the court must not only police counsel, "it must also police itself".)

Moreover, even disregarding the time between the denial of the Petition for Certiorari and defense counsel's notification to the court and the AUSA of the denial, the court's decision to set the date for the status conference a month into the future and then to postpone it again for nearly another month, put the case beyond the seventy-day deadline. This scheduling protraction cannot fairly be laid at defense counsel's feet.

The fact that Defendant's counsel asked that Defendant be present at the status conference, with the result that some delay occurred, cannot justify any exclusion from the Speedy Trial clock. A conference could easily have been convened, if the court had been aware of the looming deadline, with counsel

9

only, at which a trial date could have been set.

The government urges the court to impose an "ends of justice" exclusion under 18 U.S.C. § 3161(h)(8), deducting sufficient time to bring the case under the seventy-day limit. Much of the Speedy Trial Act's flexibility is indeed furnished by § 3161(h)(8), which permits a district court to exclude a delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by the delay outweigh the public's and defendant's interests in a speedy trial. Zedner v. United States, 126 S. Ct. 1976, 1983-84 (2006).

This provision gives the district court discretion, within limits, to accommodate delays for case-specific needs. Id. The Act sets out a non-exhaustive list of considerations that the court should bear in mind in deciding whether to grant or deny a continuance on this basis.[2]  See 18 U.S.C. §

---

[2] The following are the relevant factors:

(I) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is

10

3161(h)(8)(B). Nevertheless, "[a] trial court's discretion to authorize an 'ends of justice' continuance is relatively circumscribed, and continuances should not be granted cavalierly." United States v. Barnes, 251 F.3d 251, 256 (1st Cir. 2001) (citation omitted). "At the close of the day, . . . reasonableness serves as a touchstone of an 'ends of justice' analysis." Id. at 256. In the circumstances now before the court, while the inattention by the court and government can be rationally explained by the unusual procedural posture of this case, no exclusion can be reasonably justified by § 3161(h)(8)(b), or any other provision of the Speedy Trial Act.

It is most unfortunate that in the byzantine context of

---

unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161 (h)(8)(B).

11

this case the court, even while making significant efforts to stay on top of the case, overlooked the Speedy Trial deadline when the case returned from the Supreme Court.  As unavoidable as dismissal is, however, it would be both unsupportable under the Act, and  unfair to the government, to dismiss this case with prejudice.  See 18 U.S.C. § 3162(a)(1) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.")

Several factors counsel a dismissal without prejudice. First, the crimes charged are serious.  Second, Defendant was in the position to promptly notify the court of the denial of his Petition for Certiorari, and to insist on an earlier conference.  He had some role therefore in the Speedy Trial problems.  While this fact may not justify denial of the motion to dismiss, it may be considered on the question whether the denial should be with or without prejudice. Third, the government's misconduct here was not egregious.

Fourth, the unusual procedural history of the case caught the court (and, apparently, the government) off guard. This oversight will not recur.[3]

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 38) has been allowed, but without prejudice, and the government's Motion for Excludable Delay (Dkt. No 37) has been denied.

*/s/ Michael A. Ponsor*
MICHAEL A. PONSOR
U. S. District Judge

---

[3] This ruling serves as a reminder that the government and the court have an independent responsibility, in protection of their separate and independent interests, to insure that the Speedy Trial Act's provisions are scrupulously complied with.

13